IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| VERNE J. BOGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-124-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Merrill Schneider
P. O. Box 16310
Portland, Oregon  97292-0310

Linda S. Ziskin
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, Oregon  97035

     Attorneys for Plaintiff

Kent S. Robinson
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

     Attorneys for Defendant


KING, Judge:

Plaintiff Verne Boger brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse the decision of the Commissioner.

## BACKGROUND

Boger first applied for DIB on January 16, 1987.  His application was denied on October 30, 1987, and he did not appeal.

Boger filed a second application for DIB on September 23, 1997, alleging disability beginning February 22, 1986.  The application was denied initially and upon reconsideration. After a timely request for a hearing, Boger, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on February 12, 1999.  On April 19, 1999, the ALJ issued a decision finding that Boger was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on October 12, 2001.

Page 2 - OPINION AND ORDER

Plaintiff appealed the denial to the United States District Court, District of Oregon on

October 24, 2001.  On February 6, 2003, the Honorable Ancer Haggerty reversed and remanded

for further proceedings.  Judge Haggerty noted that the relevant period was October 30, 1987, the

date of the denial of Boger's first application, through December 31, 1991, Boger's last date

insured.  Judge Haggerty found that Boger had met his burden to proceed beyond step two of the

sequential evaluation process.  He commented that both parties have a duty to complete the

record.  Finally, Judge Haggerty concluded that Boger raised a "colorable argument that his due

process rights have been infringed" by the appeal process and deadlines, potentially warranting

reopening his initial application.  Judge Haggerty directed the ALJ to evaluate Boger's due

process claim on the merits.

The ALJ held a subsequent hearing on August 31, 2005.  On November 18, 2005, the

ALJ issued a decision finding that plaintiff was not disabled and not entitled to benefits.  The

Appeals Council declined to review the decision of the ALJ on November 25, 2007, making the

ALJ's November 2005 decision the final decision of the Commissioner.

### DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert.

denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner

determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is

engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds

to step two and determines whether the claimant has a medically severe impairment or

combination of impairments.  A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and

416.920(c).  If the claimant does not have a severe impairment or combination of impairments,

disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ concluded that the appeal deadlines did not infringe on Boger's due process rights; Boger failed to establish that his mental deficiency was so profound that it warranted reopening his initial January 16, 1987, application for DIB.

The ALJ also determined that Boger suffered from cognitive deficits and chemical sensitivity, which constituted severe impairments. However, the ALJ found that these impairments did not meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ determined that Boger could perform a limited range of light exertion activity. He could lift up to 20 pounds occasionally and stand or walk at least two hours in a day. Boger was restricted to routine, repetitive work with little public contact and could not tolerate hazards or other environmental irritants.

The ALJ did not consider whether Boger could perform his past work as Boger's work history was somewhat incomplete. The ALJ concluded, however, that someone with Boger's residual functional capacity ("RFC") could perform work in the national economy, including as a small products assembler, packing line worker and garment sorter.

## FACTS

Plaintiff, born in 1945, alleges disability beginning on May 21, 1986, due to fatigue, memory loss, and balance problems. Boger was diagnosed with toxic metal poisoning after drinking water with high levels of aluminum at his apartment complex. Within weeks of moving in, Boger developed a rash, diminished vision, balance problems, and fatigue. He stopped

drinking the water in May of 1986. Plaintiff successfully sued the landlord, obtaining a jury verdict of $880,000 in 1989, about half of which he pocketed.

Boger did not seek treatment for any mental impairments after the 1989 trial, through December 31, 1991. He next sought treatment in May 1992 when his truck engine caught on fire and he had to kick out the windows to escape. In 1996, Boger experienced some of the same symptoms as he had when experiencing the toxic poisoning, including dizziness, nausea, disorientation, and weakness. He learned that his pharmacist had accidentally substituted Allopurinol for his blood pressure medication, Atenolol.

In 1998, Robert Grimm, M.D., diagnosed left hemihypesthesia[1] and chronic vestibulopathy and concluded that plaintiff was "not a viable candidate for the workplace." Tr. 392.

Plaintiff completed the tenth grade and worked in a variety of jobs prior to his alleged onset date of disability. He worked as a janitor, machine operator, crane operator, forklift driver, and drill press operator. After his onset date, he worked at a plastics recycling plant for a short time until his doctor recommended he leave due to the toxic fumes.

## DISCUSSION

I.    Medical Opinions

Boger challenges the ALJ's opinion for failing to adopt the opinion of Robert Grimm, M.D. and for failing to include the limitations identified by William Morton, M.D.

---

[1]"Impaired or decreased tactile sensibility." Merriam Webster's Medical Desk Dictionary 361 (1961).

The previous ALJ concluded that the functional assessments were irrelevant for purposes of the pending application because Dr. Grimm and Dr. Morton completed them after the date last insured.  Judge Haggerty rejected the ALJ's conclusion and opined that "retrospective medical opinions" are relevant and that the functional assessments "were based on plaintiff's physical capabilities during the relevant time period (i.e. on or prior to December 31, 1991)." Tr. 652.

Dr. Grimm concluded in April 1998 that Boger could stand and walk for up to four hours a day and could sit for fewer than two hours a day, which together do not equal an eight-hour day.  He also opined that Boger was unable to climb stairs or ladders, and identified the fact that Boger had limitations in handling, fingering and feeling.

Although Judge Haggerty noted that Dr. Grimm's functional assessment was based on Boger's abilities before Boger's date last insured, the ALJ asserted that Dr. Grimm's assessment was based on a "recent neurological exam (4-24-98)."  Dr. Grimm reported that Boger had never "fully recovered from his difficulties in the 1980's," and that he had experienced  "fatigue, some continued balance difficulties, and clumsiness with fine control of his fingers" in the intervening years. Tr. 390.  When Boger was given the wrong prescription drug in 1996, he experienced some of the same symptoms as he had during and after the drinking water episode.  These symptoms–headaches, problems with balance, clumsiness, fatigue and short-term memory problems–"precipitat[ed] his petition for a disability status with Social Security" in part.  Tr. 391.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.

Page 8 - OPINION AND ORDER

Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Id. at 831.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ failed to account for Dr. Grimm's 2005 submission in which Dr. Grimm clarified that he examined Boger in 1986, 1987, 1988 and 1989 and that he believed "based upon my serial neuro exams 1986-89, to a degree of medical certainty," that Boger could not have returned to work that required balance and fingering. Tr. 985.  The only reason the ALJ gave for rejecting Dr. Grimm's analysis was that it was based on a neurological exam from April 24, 1998.  However, as Dr. Grimm made clear in his 2005 submission, his conclusion about Boger's limitations in balancing and fingering objects "were antecedent to additional health troubles after 12-31-91." Tr. 985.  The VE specifically testified that if a claimant with Boger's RFC had the additional limitation of loss of sensation and fine finger control, it would be "difficult to do these jobs." Tr. 1021.

Rather than relying on the functional limitations provided by Dr. Grimm, the ALJ relied on Dr. Morton's assessment of June 1998.  Dr. Morton was another of plaintiff's treating

physicians who concluded that Boger had no limitations in lifting, standing, walking or sitting,
and no limitations in reaching, handling, fingering or feeling. Dr. Morton did find that Boger
would frequently have had trouble twisting, stooping, crouching, climbing stairs and ladders, and
that he should avoid all exposure to fumes, odors, dusts, gases, poor ventilation and should avoid
concentrated exposure to hazards such as machinery and heights. Finally, Dr. Morton opined
that Boger's "impairment and treatment" would have caused him to miss work "more than four
times a month." Tr. 397.

       The ALJ stated that he accepted Dr. Morton's functional limitations, but he did not
discuss Dr. Morton's opinion about Boger's absences. Although the VE did not testify in this
case how many days a month an employee could miss work, VEs typically testify that an
employer would not tolerate an employee missing two to three days a month. See Gabree v.
Astrue, No. CIV S-07-713 DAD, 2009 WL 139577, *9 (E.D. Cal. Apr. 28, 2009) (three days a
month not tolerable); Jondahl v. Apfel, No. CV-99-965-ST, 2000 WL 22300559, *8, *14 (D. Or.
Nov. 8, 2000) (employee may miss no more than two days a month); Williams v. Apfel, No. CIV
00-8-ST, 2000 WL 1658369, *12 (D. Or. Sept. 28, 2000) (VE testified, "the rate of absence
typically allowed in the competitive work market or work setting would be about two per
month."); Ploesser v. Apfel, No. CV-98-1543-ST, 2000 WL 92811, *10 (D. Or. Jan. 18, 2000)
(two days a month not tolerable). This is sufficient support for me to conclude that the VE in this
case would testify similarly.

       Since the ALJ accepted Dr. Morton's assessment, but never made mention of the
limitation that Boger would miss more than four days a month of work, the hypothetical
questions the ALJ posed to the VE did not include all of Boger's limitations. Hypothetical

Page 10 - OPINION AND ORDER

questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id. Furthermore, as I noted above the ALJ failed to adequately address Dr. Grimm's opinion about Boger's fingering and handling limitations.

In sum, there is insubstantial evidence to support the ALJ's rejection of Dr. Grimm's functional assessment, and there is insubstantial evidence to support the ALJ's conclusions about Boger's residual functional capacity and jobs in the national economy that Boger can perform.

II.      Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine, which results in an award of benefits, however, is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in

which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

As I indicated above, the ALJ failed to properly address the opinions of Dr. Grimm and Dr. Morton. Since the VE testified that someone with fingering problems would have difficulty doing the jobs identified, and since VEs typically testify that someone who misses two or more days a month would be unemployable, there are no outstanding issues to be dealt with. Finally, if either of the opinions provided by Dr. Grimm or Dr. Morton were credited as true, the ALJ would be required to find Boger disabled from the period of October 30, 1987, through December 31, 1991.

I have also considered the delay in this case. Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001) ("remand for benefits is indicated particularly where a claimant has already experienced lengthy, burdensome litigation"). Boger filed his claim almost twelve years ago and it is not fair or efficient to allow the Commissioner a third chance to correct his decision. Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Since further administrative proceedings would serve no purpose, I conclude that this case should be reversed and remanded for a finding of disability.

II.    <u>Re-Opening Previously Denied Application</u>

Boger initially filed an application for DIB in 1987, which was denied.  He never

appealed that decision.  He argued to Judge Haggerty that, even though he waited nearly 10 years

to reopen his initial application, he had a colorable claim that "the Agency's notice and appeal

deadlines infringe on his due process rights because of his mental impairments."  Tr. 656; <u>Rolen</u>

<u>v. Barnhard</u>, 273 F.3d 1189, 1191 (9th Cir. 2001) (plaintiff must present colorable claim of due

process violation).  Judge Haggerty specifically declined to make a determination on the merits

of Boger's claim, remanding to the ALJ to "consider those deficiencies in determining whether

the notice afforded to plaintiff was 'reasonably calculated to afford [plaintiff his] right to present

objections . . .' " and whether "applying the deadlines for appeal to a person with plaintiff's

cognitive skills comports with due process."  Tr.656 (quoting <u>Rolen</u>, 273 F.3d at 1191).

The ALJ reviewed the available medical records, as well as the testimony of Boger's

partner and Boger's sister, and concluded that Boger was forgetful and had trouble focusing but

was not mentally incapacitated.  Boger did not have any trouble reading and comprehending the

denial notice and he "remained competent to manage his own affairs."  Tr. 633.  He was

represented by an attorney in his litigation against his landlord for toxic poisoning, he was trying

to find work and eventually did work at a plastics recycling plant.  Although he left the job, he

did so due to the fumes, and not because he was mentally incapacitated.  Accordingly, the ALJ

found that Boger had not presented sufficient evidence for a finding that plaintiff's mental

condition was so deficient as to interfere with his ability to appeal the denial decision.

Boger argues that by reviewing the due process claim on the merits, the ALJ has

effectively reopened the application.  See <u>Lewis v. Apfel</u>, 236 F.3d 503, 510 (9th Cir 2001) ("res

judicata does not apply when an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period").

Contrary to Boger's argument, the ALJ did not consider Boger's *disability* on the merits for the prior adjudicated period; rather, the ALJ considered Boger's *due process claim* on the merits. The ALJ neither explicitly nor implicitly reopened the prior determination finding Boger not disabled.

Boger contends the record is incomplete on the issue of his mental capacity because it is missing a neuropsychological examination performed by Michael Crow, M.D. Boger does not attempt to summarize what that examination showed, other than Dr. Crow found "an organic mental impairment." Tr. 195. The ALJ asked Boger, represented by an attorney, to identify any additional records he thought the ALJ should have and the ALJ offered to assist Boger in finding any additional evidence. Boger did not identify anything further that he thought was relevant. Only one new statement from Dr. Grimm was submitted. Boger had ample opportunity, with the ALJ's explicit agreement to assist, to obtain the records he thought necessary and he did not submit this record.

The ALJ's conclusion that Boger failed to show a due process violation is supported by substantial evidence in the record. Accordingly, the prior adjudicated period should not be reopened.

///

///

## CONCLUSION

The decision of the Commissioner is reversed.  The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____18th_____ day of August, 2009.


       ____/s/ Garr M. King_____
       Garr M. King
       United States District Judge